### PLATT v. LE COCQ et al.

(Circuit Court, D. South Dakota. November 6, 1906.)

**1. CARRIERS—COMMON CARRIERS—EXPRESS COMPANIES.**

Under Rev. Civ. Code S. D. 1903, § 1577, providing that every one who offers to carry persons, property, or messages is a common carrier of whatever he thus offers to carry, an express company offering to carry money for hire is a common carrier thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1, 465.]

**2. SAME—STATE REGULATIONS.**

Rev. Pol. Code S. D. 1903, c. 7, regulating common carriers, applies to express company doing business within the state, whether incorporated or not, and subjects them to the regulation and control of the state board of railroad commissioners.

**8. CONSTITUTIONAL LAW—STATE LEGISLATURE—POWERS.**

The Legislature of a state does not look to the state Constitution for power to act on a particular subject, but only to determine whether the sovereign legislative will has been in any manner restricted or limited by that instrument.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 30, 48.]

**4. COMMERCE—REGULATION—RIGHTS OF STATE.**

The right of a state to regulate the business of common carriers within its boundaries, so far as that business affects the public, is founded on the state's right to protect its commerce.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Commerce, § 7.]

**5. CARRIERS—REGULATION—STATE STATUTES—CONSTRUCTION—DISCRIMINATION.**

Pol. Code S. D. c. 7, § 437, provides that it shall be unlawful for any common carrier subject to the provisions of the article to make or give any preference or advantage to any particular person, firm, company or corporation, or locality, or any particular description of traffic in any respect whatever, or to subject any particular description of traffic to any prejudice or disadvantage in any respect whatsoever. *Held*, that such section must be construed as one prohibiting the subjection of any particular person, etc., or any particular description of traffic, to an unreasonable prejudice or disadvantage.

**6. SAME—EXPRESS COMPANIES—RECEIPT OF MONEY.**

Rev. Civ. Code S. D. 1903, § 1578, provides that a common carrier, if able to do so, must accept and carry whatever is offered him at a reasonable time and place of a kind that he undertakes or is accustomed to carry; and Pol. Code 1903, c. 7, § 437, prohibits a common carrier from subjecting any particular description of traffic to any prejudice or disadvantage in any respect whatsoever. *Held*, that a rule of an express company, providing that shipments of money would be received only during regular office hours if tendered before the departure of the last train on which the shipment could be made, which operated to require shipments of currency by a bank to be tendered on the day of the shipment before 6:30, 7, or 7:45 a. m., was unreasonable, and that the board of railroad commissioners had power to order the express company, so long as it held itself out as a common carrier of money, to receive same for transportation at all reasonable business hours of the day preceding the departure of trains at the hours specified.

**7. SAME—DEFENSE—PROFIT.**

Where an express company held itself out as a common carrier of money, it was no defense to an order of the board of railroad commissioners, requiring the receipt of money packages for transportation during reasonable business hours of the day preceding actual shipment, that to obey such order would compel the express company to transact the business at a loss.

**8. SAME—OTHER MEANS OF TRANSPORTATION.**

It was no defense to an express company's obligation to comply with the railroad commissioners' order that shippers of money could use the United States mails, and were therefore not prejudiced by the express company's rule, requiring presentation of money packages for shipment at unreasonable hours.

**9. SAME—JUDGMENT.**

Where an express company instituted suit in a federal court to restrain the enforcement of an order of the state railroad commission, requiring it to accept money packages for transportation during reasonable hours on the day preceding actual shipment, in which action defendants filed a cross-bill, seeking to enforce such order, the federal court, on determining that the order was valid, was entitled to pass a decree for its enforcement, notwithstanding Rev. Pol. Code S. D. 1903, c. 7, providing that, on the refusal of a common carrier to obey the lawful orders of the board of railroad commissioners, it should be the duty of the commissioners, etc., to apply to the state courts for the enforcement thereof.

In Equity.

Frank H. Platt and Boyce & Warren, for complainant.

P. J. Rodge, for Railroad Commission.

Campbell & Taylor, for Aberdeen Nat. Bank.

CARLAND, District Judge: The above action has been submitted to the court upon pleadings and proofs. It was brought by complainant, a citizen of the state of New York, in behalf of the United States Express Company, an unincorporated association, none of whose members are citizens of the state of South Dakota, against the defendants, who are citizens of this state, and with the exception of the defendant bank are the Board of Railroad Commissioners of the State of South Dakota and its secretary.

The purpose of the action is to enjoin the enforcement against the United States Express Company of an order made by said board of railroad commissioners, on August 11, 1905, in the following terms:

"Ordered, that said defendant United States Express Company accept and receive at its said office from the petitioner, the Aberdeen National Bank, at Aberdeen, South Dakota, all moneys, specie and currency tendered said defendant by the said petitioner for shipment to the points named in said petition and in the findings of fact, in the state of South Dakota, upon payment of the charges therefor at its office at Aberdeen, South Dakota, at any and all reasonable business hours of the day preceding the departure of said trains so leaving Aberdeen, at the hours of 6:30, 7 and 7:45 a. m. Further ordered that said United States Express Company comply with the above order within ten days from and after the service of this order upon said express company.

"Dated August 11th, 1905."

For the reason that said board had no authority or jurisdiction to make the same, and for the further reason that said order is unjust and unreasonable to such an extent as to deprive the United States Express Company of its property without due process of law, in that the expense that it would be necessary to incur, in order for the United States Express Company to comply with said order, would be so great that the company could not earn any profit upon its money business, shipped from Aberdeen. After the filing of the bill, a temporary injunction was issued, restraining the defendant from enforcing said order pending this litigation. The defendants subsequently answered the bill and also filed a cross-bill, praying for the enforcement of said order. Complainant demurred to the cross-bill, and the whole case is now before the court for determination. From the pleadings and proofs, the following facts material to the decision of the case appear:

On the 11th of August 1905, the Aberdeen National Bank was, and for several years prior thereto has been, a banking institution organized under the national bank laws of the United States, and did business at the city of Aberdeen, in the state of South Dakota, and it is and was a part of the regular and legitimate business of the Aberdeen National Bank to act as depository for, and receive from time to time, from other banks in the numerous towns, surrounding and adjacent to said city of Aberdeen, currency, money, and specie for safe-keeping, and also to furnish to said banks, when called for and upon notice, money, currency and silver for the conduct of their daily and regular business operations.

That on said date, and for years prior thereto, the United States Express Company operated and conducted its business as an express company upon and over the lines of the Chicago, Milwaukee & St. Paul Railway Company in and through the city of Aberdeen.

S. D., and conducted exclusively the express business done over said lines of said railway. That during all of said times said railway company connected the said city of Aberdeen with the following named towns, located in the vicinity of and adjacent to Aberdeen, in the state of South Dakota, to wit, Groton, Andover, Webster, Waubay, Pierpont, Langford, Britton, Frederick, Ipwich, Bowdle, Roscoe, Selby, Evarts, Osmore, and Eureka; and that said Chicago, Milwaukee & St. Paul Railway Company was and is the only railway connecting said towns with said city of Aberdeen, and that in each of said towns there was and is located a bank which makes use of the said Aberdeen National Bank as its depository, and which banks in said towns rely upon said Aberdeen National Bank to furnish them silver, currency, and money when called upon so to do for use in the conduct of their regular and ordinary business. That during all of said time, and for many years past, the railway trains of said railway company running from the city of Aberdeen to said various towns, carrying the express matter of complainant, and the only trains carrying such express matter, left Aberdeen at 6:30, 7, and 7:45 a. m.

That said United States Express Company, during all the time herein referred to, had a rule in force for the government of its business at Aberdeen as well as at all points of shipment of said company, which was in words as follows:

"Shipments of money and valuable packages must be received only during the regular office hours, but must not be received during office hours if tendered for shipment after the departure of the last train upon which shipment could have been made. Such shipments must not be accepted when it will be necessary to store them in the office after office hours, except by special authority of the general superintendent to whom each case must be referred for decision."

That on the 11th day of August, 1905, and for a long time prior thereto, the United States Express Company enforced said rule at said city of Aberdeen, and by reason of such enforcement at all times refused to receive from said Aberdeen National Bank shipments of money for said banks located in the towns aforesaid, and which were customers and patrons of the said Aberdeen National Bank, unless such moneys were presented to said express company on the morning of the day of the departure of such trains, and before the departure thereof; and said express company has at all times refused to accept or receive for shipment to said banks and towns moneys tendered to it by the Aberdeen National Bank during the usual business hours, or during any hours of the afternoon or day preceding the departure of such trains.

On July 17, 1905, the said Aberdeen National Bank, feeling itself aggrieved by the action of the United States Express Company in the premises, lodged a complaint with the board of railway commissioners, setting forth the treatment which said bank had received from said express company, and said board thereupon made its order, fixing a time for hearing said complaint, and duly cited said express company to appear at said hearing upon July 25, 1906. The express company appeared and by its counsel participated in said hearing and introduced evidence in its own behalf. Thereafter, pursuant to said hearing, and after the consideration of the evidence submitted, said board of rail-

way commissioners, on the 11th day of August, 1905, made the order hereinbefore quoted. Whereupon the complainant brought this action for the purpose hereinbefore stated.

It further appears that the United States Express Company, during all the times referred to, offered, and still does offer, to carry money from Aberdeen to the towns mentioned, upon payment of its reasonable charge therefor. It also appears that, if it is necessary, in order to comply with the order complained of, to purchase a safe for the storing of money overnight, said safe could be purchased for $1,250. That, if a watchman was also necessary, the expense thereof would be $50 a month. It is further claimed by the complainant that the extra expense of keeping shipments of money over night would consume all of the profits arising from the business and leave the company to do its money business at a loss. It is not necessary in this proceeding to discuss the question as to whether the express company is a common carrier of money. Beyond all question it is such. "Every one who offers to carry persons, property or messages is a common carrier of whatever he thus offers to carry." Rev. Civ. Code S. D. 1903, § 1577; 12 American and English Encyc. of Law (2d Ed.) p. 543; 6 Cyc. 369. It is hardly necessary to discuss the question as to whether the United States Express Company, as such common carrier, is subject to the provisions of chapter 7 of the Revised Political Code of South Dakota of 1903. Section 431 of said chapter 7, in express terms and otherwise, provides that express companies shall be subject to the provisions of said chapter so far as applicable, and sections 446, 447, and 448 of said chapter clearly and plainly authorize the proceeding which resulted in the order complained of, so that there can be no ground for urging the proposition that the board of railroad commissioners had no jurisdiction, power, or authority to make the order. The only serious question presented by the record is whether the order was justified by the evidence before the board of railway commissioners or now before this court.

Whether the order complained of is right or not depends upon the question as to whether the rule hereinbefore quoted, in its operation at Aberdeen, is in conflict with the law of South Dakota regulating the business of common carriers. The United States Express Company is a common carrier doing business within the state of South Dakota, and it is not material whether it is an incorporated company or not, or whether it has received a charter from the state of South Dakota or any other sovereignty to carry on the business of a common carrier. Having voluntarily become a common carrier of money and other express matter between points in the state of South Dakota, so far as that business is concerned it is subject to the laws thereof. The right of the state of South Dakota to regulate by law the business of common carriers, so far as that business is impressed with a public use, does not depend upon the fact as to whether said express company received its charter or right to do business from said state. Nor does it depend upon the language of the state Constitution, as its Legislature does not look to the state Constitution for power to act, but only looks

to that instrument to see if the sovereign legislative power of the state is in or by such Constitution in any way restricted or limited.

The right of the state of South Dakota to regulate the business of common carriers, so far as that business affects the public, has its foundation and source in the right of the state to protect its commerce. The commerce of a state or nation is its lifeblood. Without it there could be no prosperity of its citizens, and the state is in duty bound, and it is clearly within its powers, when it legislates for the protection and regulation of its commerce. Laws which regulate the relation of the carrier to the public, and provide against discriminations and abuses, do not interfere with the private business of the common carrier.

Acting clearly within its power in the opinion of this court, the Legislature of the state of South Dakota enacted section 437 of chapter 7 of the Political Code of South Dakota of 1903, wherein is found the following language:

"It shall be unlawful for any common carrier, subject to the provisions of this article to make or give any preference or advantage to any particular person, firm, company, corporation or locality or any particular description of traffic, in any respect whatever or to subject any particular description of traffic to any prejudice or disadvantage in any respect whatsoever."

In Cincinnati Chamber of Commerce and Merchants' Exchange v. Baltimore & Ohio Southwestern Railroad Company et al., 10 Interst. Com. Com'n R. 378, the Interstate Commerce Commission held that, under section 3 of the act of Congress to regulate commerce, which is similar in its terms to the law under consideration in this case, the Interstate Commerce Commission was authorized after investigation to order carriers to cease and desist from subjecting any particular person, locality, or description of traffic to undue and unreasonable prejudice or disadvantage in any respect whatsoever, and that its jurisdiction extended to a case of alleged unlawful prejudice and disadvantage to shippers of outbound package freight through the enforcement by carriers of a regulation, providing for the early closing of depots used for the reception of such freight.

By the terms of section 446, the power of the board of railroad commissioners to entertain, hear, and determine the complaint of the Aberdeen National Bank was limited to violations of chapter 7 hereinbefore quoted, and the validity of the order complained of must be tested by the provisions of said chapter 7, and those only. Hence it follows that said order must stand or fall upon the language of section 437 just quoted. The question, then, is: Do the facts before the court show a violation of the terms of said section 437? This presents the question as to whether the rule hereinbefore referred to, of the United States Express Company, as enforced at Aberdeen, violates any of the provisions of said section 437.

There is no testimony which shows that any locality in the state of South Dakota is given any preference or advantage or subjected to any prejudice or disadvantage by reason of the operation of said rule, for it operates upon all towns in the state alike, and we cannot compare Aberdeen with the city of Minneapolis in the state of Minnesota, for the reason that the laws of South Dakota have no extraterritorial force, and therefore cannot regulate the business of the United States

Express Company at Minneapolis. There is no testimony that any particular person, company, firm, corporation, or any particular description of traffic is given preference or advantage, for the reason that no particular person, company, firm, corporation, or any particular description of traffic is specified or shown to have been given any preference or advantage. It remains to be determined whether any particular person, company, firm, corporation, or any particular description of traffic is subjected to any prejudice or disadvantage, in any respect whatsoever, by the enforcement of said rule.

The court is of the opinion that the language of the statute referred to must be construed as only prohibiting the subjection of any particular person, company, firm, corporation, or any particular description of traffic to an unreasonable prejudice or disadvantage. The board of railroad commissioners seem to have put its construction upon the law, as appears from their findings and conclusions, and the court is of the opinion that this view of the law is correct, as the Legislature could not have intended a literal enforcement of the statute, because that would leave the express company no discretion in the conduct of this business whatever, and, if the law could be construed as prohibiting any prejudice or disadvantage, the validity of the law would be in danger. A similar clause in the act of Congress, known as the "Interstate Commerce Act," contains the words "undue and unreasonable," and the court believes that the present law should be interpreted as though these words were in the law. We must now determine whether the rule as enforced at Aberdeen subjected the Aberdeen National Bank or the traffic of money shipments to an unreasonable prejudice or disadvantage. Taking the hours at which the Aberdeen National Bank or any other shipper of money at Aberdeen must present money for shipment to the United States Express Company, the court is of the opinion that it plainly appears that the time prescribed for such presentation is unreasonable, considering the question of time alone. If it is an unreasonable time, then it follows that the bank and the traffic is subject to prejudice and disadvantage, for the reason that the requirements of the rule prescribed by the company are unlawful, as the law requires the company as a common carrier to receive property which it offers to carry at a reasonable time. This is the common law as well as the law of South Dakota, which is no more than a codification of the common law.

The law of the state of South Dakota, as expressed in section 1578 of the Revised Civil Code of 1903 of South Dakota, reads as follows:

"A common carrier must, if able to do so, accept and carry whatever is offered him at a reasonable time and place, of a kind that he undertakes or is accustomed to carry."

The court unhesitatingly finds that the hours at which the United States Express Company requires shippers of money to present their money for shipment at Aberdeen are not reasonable, within the meaning of the law, considering the question of time alone. Supposing the trains of the Chicago, Milwaukee & St. Paul Railway Company, instead of leaving at the hour specified, left at 1 o'clock each day, would the express company receive money packages for shipment on those trains

at 6:30 in the morning. Using common sense in our judgment, we must answer this in the negative, and we think that the company would have a perfect right to say that that time of day was an unreasonable time, and that it could not be compelled to keep its office open for the receipt of express matter at such time. So far as the question of time is concerned, the bank could no more be compelled to present its money for shipment at 6:30 a. m. than the express company could be compelled to receive it at that time. We are not living in the days when Lane v. Cotton was decided, and what is a reasonable or unreasonable time for the presenting of money for shipment by express companies must be determined by the conditions which exist now, and with reference to the way business is now conducted, and the office hours of the banks. It seems plain, when considering merely the time of presentation, that the hours fixed by the express company are unreasonable, and it necessarily follows that, if they are unreasonable in themselves, the bank and the traffic in the shipment of money are subjected to unreasonable prejudice and disadvantage, within the meaning of the statute.

It is urged, however, that a compliance with the order of the board of railroad commissioners will necessitate an expenditure of, on the part of the express company, that will prevent its earning any profit whatever on its money shipments. This presents the question whether a common carrier, which has violated the valid laws of a state, may urge in justification of such violation that to obey the law would compel it to do business without profit. The state, through the board of railroad commissioners, is not seeking to tell the express company what it should charge for the carrying of these money shipments; nor is it seeking to compel the express company to carry money at all. It is simply asking that, if the express company shall choose to do business in this state, it shall obey its laws. The proposition would seem to be plain that the express company, if it cannot receive money shipments in accordance with the laws of the state and make any money thereby, good business judgment would require it to cease carrying money, and, judging from the testimony in this record, the express company would not be injured to any appreciable extent if it should cease to carry money.

It is further urged that the defendants cannot complain of the rules enforced by the express company for the reason that the United States is carrying money by mail out of Aberdeen for less than the express company can carry it, and that the bank and all other shippers of money may use the United States mail, and therefore they are not prejudiced by the rule of the company. This presents the question whether a common carrier, which is holding itself out to the public as a common carrier of money, may say, in answer to a person who complains of the unreasonableness of its rules, that there are other ways by which you can ship your money, and in this manner avoid a compliance with the laws of the state. We think the proposition is wholly untenable, so long as the express company holds itself out as a common carrier of money. The Aberdeen National Bank, under the laws of the state, has a right to present money to it for shipment at a reasonable time, and, if it does, the express company is bound to receive it, and it cannot say to the bank, "You can ship your money some other way," un-

less, of course, the company desires to cease the business of being a common carrier of money, which it is at liberty to do at any time. In the judgment of this court the order of the board of railroad commissioners was well within the power and authority of the board, and its conclusion upon the facts correct.

It remains to be considered as to what shall be the judgment of the court. The usual judgment that should be entered would be a dismissal of the bill for want of equity; but the defendants, having set up all the facts by cross-bill, pray for an enforcement of the order of the board of railroad commissioners. Complainant urges that this court is without jurisdiction to enforce said order, and cites the provisions of chapter 7 of the Revised Political Code of South Dakota of 1903, wherein it is provided that, when any common carrier subject to the provisions of said chapter shall refuse or neglect to obey any lawful order or requirement of the state board of railroad commissioners, it shall be the duty of said commissioners, and lawful for any other person or company interested in such order, to apply in a summary way by petition to the circuit court in any county in the state in which the common carrier complained of has its principal office, or in any county through which its lines of road passes or is operated, or in which the violation or disobedience of said order or requirement may happen, alleging such violation or disobedience as the case may be, and that said court shall have power to hear and determine the matter and enforce its judgment by writ of injunction or other proper process, mandatory or otherwise. The complainant did not wait for the bank or the railroad commissioners to take the course pointed out by the state statute for the enforcement of the order, but voluntarily came into this court, and obtained an injunction restraining the defendant from taking the necessary steps in conformity to the state statute. The defendants not only answered the bill, but came into court by way of cross-bill setting up all the facts, and asked that the court enforce the order. If the defendants had proceeded under the state statute, the express company would undoubtedly have removed the case to this court, and it would have been here for determination in any event. Mississippi Railroad Com. v. Ill. C. R. Co., 27 Sup. Ct. 90, 51 L. Ed. ——. But, without speculating about what may happen, it does appear that this court has jurisdiction of the parties and the subject-matter. Why should it not do complete justice?

There seems to be no valid objection in the way, and the court will grant the prayer of the defendants, contained in the cross-bill, by entering a decree directing that a permanent injunction issue in this case, enjoining the United States Express Company from further refusing to obey the order of the railroad commissioners, herein complained of. Said decree shall also provide for the dissolution of the temporary injunction issued herein. Thirty days' stay of proceedings subsequent to the entry of decree will be granted so that complainant may appeal, if he shall be so advised.

And it is so ordered.