## UNITED STATES v. WELLS-FARGO EXPRESS CO.

(Circuit Court, N. D. Illinois, E. D.    April 22, 1908.)

Nos. 28,726–28,730.

1. CARRIERS—INTERSTATE COMMERCE LAW—EXPRESS COMPANIES.

By the provision of Hepburn Act June 29, 1906, c. 3591, § 1, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892), amendatory of Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), that "the term 'common carrier' as used in this act shall include express companies," such companies are made subject to all provisions of said interstate commerce act and its amendments, so far as the same may be applicable, to the same extent as though they had been named in the original act, including the provisions of sections 2 and 3 (24 Stat. 379, 380 [U. S. Comp. St. 1901, p. 3155]) against unjust and unreasonable discriminations, of section 6 (24 Stat. 380 [U. S. Comp. St. 1901, p. 3156]) as amended by the Hepburn act (34 Stat. 586 [U. S. Comp. St. Supp. 1907, p. 897]), prohibiting the taking of any greater or less sum for transportation of property than that named in the tariffs filed, and section 1 of the Elkins Act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]), as so amended, making it unlawful to offer or accept any rebate from the published rate, or other discrimination in respect of the transportation of any property whereby any advantage is given.

2. SAME—CONSTRUCTION—"DISCRIMINATION."

The use of the word "discrimination" in section 1 of the Elkins act (Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880]), as amended by Hepburn Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1907, p. 897), without the qualifying words "unjust," etc., used in the original Act Feb. 4, 1887, c. 104, §§ 2, 3, 24 Stat. 379, 380 (U. S. Comp. St. 1901, p. 3155), was not intended to broaden the provisions of the earlier act in that respect; the word "discrimination" itself, as so applied, implying an unjust or unfair distinction.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2099.]

3. SAME.

The provisions of Interstate Commerce Act Feb. 4, 1887, c. 104, §§ 2, 3, 24 Stat. 379, 380 (U. S. Comp. St. 1901, p. 3155), prohibiting unjust discriminations and undue and unreasonable preferences, have reference to the service rendered, and not to the person of the sender or consignee.

4. SAME—VIOLATION OF ACT—FRANKS ISSUED BY EXPRESS COMPANIES.

The issuing of franks by an express company to officers, agents, attorneys, or employés of itself or other express companies or railroad companies, or to the families of such persons, upon which property is transported from one state to another free of charge, relates to interstate commerce, which it is within the constitutional power of Congress to regulate, and is within the prohibitions of the interstate commerce act and its amendments against discrimination, undue preference, and departure from the published schedule of rates, and is unlawful. Such gratuitous carriage is not within the exceptions made in Interstate Commerce Act Feb. 4, 1887, c. 104, § 22, 24 Stat. 387 (U. S. Comp. St. 1901, p. 3170), which by their terms are restricted to certain classes of passengers carried by railroads and property carried for certain classes of shippers and for stated purposes.

In Equity. Petition to restrain violation of the interstate commerce law by the United States against the Wells-Fargo Express Company. On final hearing. Like petitions against the United States Express Company, the National Express Company, the American Express Company, and the Adams Express Company were also argued and submitted.

Edwin W. Sims, U. S. Atty., and James H. Wilkerson, Sp. Asst. U. S. Atty.

W. W. Gurley (Frank H. Platt, of counsel), for United States Express Company.

Lewis Cass Ledyard and Winston, Payne, Strawn & Shaw (Lawrence Maxwell, of counsel), for National Express Company and American Express Company.

W. W. Green and Holt, Wheeler & Sidley, for Wells-Fargo Express Company.

Cravath, Henderson & De Gerschof and Winston, Payne, Strawn & Shaw (Lawrence Maxwell, of counsel), for Adams Express Company.

KOHLSAAT, Circuit Judge. The government files its petition herein under the provisions of section 3 of "An act to further regulate commerce with foreign nations and among the states," approved February 19, 1903 (32 Stat. 848, c. 708 [U. S. Comp. St. Supp. 1907, p. 882]), to restrain defendant from issuing franks to any of-

ficer, agent, attorney, or employé of itself or other express companies and of any railroad company, and to the respective families of said several persons, and from transporting, without demanding full rate of payment therefor as published, any property of any of said persons from a point in one state to a point in another state. Defendant has answered, and the facts have been stipulated, admitting the granting of free transportation of property substantially as charged.

The issue is squarely made upon the law, and the cause is now before the court on final hearing. Those portions of the statutes of the United States involved in this proceeding are:

(1) That part of section 1 of the interstate commerce act of February 4, 1887 (24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3154]), as amended June 29, 1906 (34 Stat. 584, c. 3591 [U. S. Comp. St. Supp. 1907, p. 892]), which reads as follows:

"No common carrier subject to the provisions of this act shall, after January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employés and their families, its officers, agents, surgeons, physicians, and attorneys at law; to ministers of religion. * * * Provided that this provision shall not be construed to prohibit the interchange of passes for the officers, agents, and employés of common carriers and their families; nor to prohibit any common carrier from carrying passengers free with the object of providing relief in the case of general epidemic, pestilence, or other calamitous visitation."

(2) That portion of section 2 of said act of February 4, 1887, which reads as follows:

"That if any common carrier subject to the provisions of this act shall * * * collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

(3) That part of section 3 of the same act which reads as follows:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

(4) That part of section 6 of said act, as amended by the act of June 29, 1906, which reads as follows:

"Nor shall any carrier charge or demand, or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as specified in such tariff."

(5) Section 22:

"That nothing in this act shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, state or municipal governments. * * * Nothing in this act shall be construed to prevent railroads from giving free carriage to their own officers and employés, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employés."

(6) That part of section 1 of the act of February 19, 1903, known as the "Elkins Act," as amended June 29, 1906, which reads as follows:

"The willful failure upon the part of any carrier subject to said acts to file and publish the tariffs of rates and charges as required by said acts, or strictly to observe such tariffs until changed according to law, shall be a misdemeanor, and upon conviction thereof, the corporation offending shall be subject to a fine of not less than one thousand dollars nor more than twenty thousand dollars for each offense. And it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive, any rebate, concession, or discrimination in respect to the transportation of any property in interstate or foreign commerce by any common carrier subject to said act to regulate commerce and the acts amendatory thereof, whereby any such property shall by any device whatever, be transported at a less rate than that named in the tariffs published and filed by such carrier, as is required by said act to regulate commerce and the acts amendatory thereof, or whereby any other advantage is gained or discrimination is practiced. * * * Whenever any carrier files with the Interstate Commerce Commission or publishes a particular rate under the provisions of the act to regulate commerce or acts amendatory thereof, or participates in any rates so filed or published, that rate, as against such carriers, its officers or agents, or any prosecution begun under this act shall be conclusively deemed to be. the legal rate, and any departure from such rate shall be deemed to be an offense under this section of this act."

(7) By the act of June 29, 1906, it was provided:

"The term 'common carrier' as used in this act shall include express companies and sleeping car companies."

It is contended by complainant that said acts of defendant in transporting property for the above persons without charge (1) constitute unjust discrimination under sections 2 and 3 of the act of 1887; (2) constitute a charge of less than schedule rates under section 6 of the act of 1887, as amended June 29, 1906; (3) violate the Elkins law of 1903, as amended June 29, 1906, in the matter of discrimination and variance from schedules. (The language of this clause of the Elkins act last referred to is substantially unchanged by the amendment.) For defendant it is claimed: (1) That such acts were concededly lawful prior to the amendment of June 29, 1906; (2) that such acts do not fall within the prohibition of the act as it now stands; (3) that said acts do not come within the meaning of "commerce" as used in the act; (4) that express companies come within the exceptions of the act as amended June 29, 1906.

Prior to the amendment of June 29, 1906, express companies were not specifically subject to the terms of the interstate commerce act and the several amendments thereto as common carriers. Since that date hitherto, they stand with reference to the act and the several amendments thereto as though they had been named in the original

161 F.—39

act of 1887. They are in no respect in an attitude different from that of a railroad, save in so far as the language of the act necessarily excludes them. It may be conceded for the purposes of this hearing that the acts complained of were lawful prior to the passage of the said amendment of June 29, 1906. Since that amendment, said transactions, so far as they contravene the provisions of said act, are unlawful. These may be stated briefly as follows: (1) The provisions of sections 2 and 3 against unjust and unreasonable discrimination in the transportation of persons or property; (2) said amended section 6, prohibiting the taking of any greater or less sum for transportation of passengers or property than that named in the tariffs filed; and (3) said section 1 of the Elkins act as amended, making it unlawful to offer or accept any rebate from the published rate, or other discrimination in respect of the transportation of any property whereby any advantage is given.

Amended section 1 of the so-called Elkins act differs from sections 2 and 3 of the original act, among other matters, in this: That the word "discrimination" is used in the former without any qualifying adjective, as "unjust," etc. It is contended by the government that this omission discloses the intention on the part of Congress "to require common carriers in interstate commerce to publish and file schedules of rates, to adhere absolutely to such rates, and to grant no preferences or discriminations unless expressly authorized by the statute." It may be doubted whether Congress intended by this language to broaden the prohibitions of the act in that respect. It is difficult to conceive of the terms "discrimination," "prejudice," or "disadvantage" as not associated with what is unjust, unreasonable, and undue. It is true the adjectives are dwelt upon in the former decisions of the court with considerable emphasis. It hardly seems, however, as though their absence would have modified the opinion rendered in these cases. Webster defines the word "discrimination," with reference to railroads, as "the arbitrary imposition of unequal tariff for substantially the same service," investing it with the sense of unjustness and unfairness. So far as appears, the Supreme Court has not had its attention called to the change, and has given it no construction. In Platt v. Le Cocq (C. C.) 150 Fed. 391, the words "prejudice and disadvantage" of the South Dakota statute were construed to mean unreasonable prejudice or disadvantage. In view of these considerations, and bearing in mind the general trend of the statute and amendments thereof, there seems to be no sufficient basis for the construction of the Elkins act asked for by the government in that respect. It is, however, evident that the passage of the acts of 1903 and 1906 contemplated a more effectual enforcement of the statute. The requirements are made more specific and the prohibitions more emphatic, and, as if to make an end of the violations theretofore winked at, it was declared in 1906 that free transportation of persons except in certain specifically named instances should not be granted after January 1, 1907.

As above said, the government insists that under these statutes as amended it is the duty of common carriers to file and publish their

tariffs (except as to those instances specifically named in section 22), and, having so done, to charge the rate to every one, including those named in the pleadings; that the "like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions," of section 2, "relates to the carriage of goods, and not to the person of the sender or consignee"— citing Great Western R. R. Co. v. Sutton, L. R. 4 H. L. 226, and Denaby Main Collier Co. v. Manchester Railway Co., 11 App. Cas. 97. In the latter case Lord Chief Justice Blackburn said:

"I think it finally settled * * * that for passing over the same portion of the railway the obligation to charge in respect of goods of the same description equally is imposed if they are 'under the same circumstances,' and that the circumstances are those relating to the carriage of goods, and not to the person of the sender."

The portion of sections 2 and 3 which refer to unjust discrimination and undue and unreasonable preference are modeled from the English tariff act, and the construction placed thereon by the English courts is deemed, to say the least, very persuasive. Interstate Commerce Commission v. B. & O. R. R. Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699; Interstate Commerce Commission v. Alabama Midland R. R. Co., 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414; Texas & Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940. The Interstate Commerce Commission (5 Interst. Com. R. 69, 77, 91) has construed section 2 as follows:

"Without further citation of authority, the construction we give to section 2 of the act to regulate commerce is that, where the service by the carrier subject to the act is 'like and contemporaneous' for different passengers, the charge to one of a greater or less compensation than to another constitutes unjust discrimination and is unlawful, unless the charge of such greater or less compensation is allowed under the exceptions provided in section 22, and that, where the traffic is 'under substantially similar circumstances and conditions' in other respects it is not rendered dissimilar within the meaning of the statute by the fact that such passengers hold unlike—or, as sometimes termed, unequal—official, social, or business positions, or belong to different classes, as they ordinarily exist in a community, or are arbitrarily created by the carrier."

Therefore it seems clear that the court should on the facts of the case consider the language above quoted from section 2 as referring to the carriage of goods, and not as applying to the person or capacity of the sender or receiver.

It is further contended for complainant that the free carriage of property not excepted in section 22, by defendant, for the classes of persons described in the pleadings, while at the same time the filed and published rate for that same service is charged against the general public, constitutes per se discrimination within the meaning of the statute. As above stated, the term "discrimination" includes unjust discrimination, and that is not within the statute which is not unjust or unfair. "The spirit as well as the letter of a statute," says the Supreme Court in Durousseau v. United States, 6 Cranch, 307, 3 L. Ed. 232, "must be respected, and, where the whole context of the law demonstrates a particular intent in the Legislature to effect a cer-

tain object, some degree of implication may be called in to aid that intent." To the same effect are The Paquete Habana, 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320, and Glover v. United States, 164 U. S. 287, 17 Sup. Ct. 95, 41 L. Ed. 440. Mr. Justice Brown, speaking for the Supreme Court in Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699, affirming the ruling of the lower court (43 Fed. 37), says:

"The object of section 22 was to settle beyond all doubt that the discrimination in favor of certain persons therein named should not be deemed unjust. It does not follow, however, that there may not be other classes of persons in whose favor a discrimination may be made without such discrimination being unjust. In other words, this section is rather illustrative than exclusive. Indeed, many, if not all, the excepted classes named in section 22 are those which, in the absence of this section, would not necessarily be held the subjects of an unjust discrimination, if more favorable terms were extended to them than to ordinary passengers. Such, for instance, are property of the United States, state, or municipal governments," etc.

The section stands, with regard to the transportation of property as originally passed, except as it may be deemed to have been modified by the language of amended section 1 of the Elkins (1903) act, and the more stringent requirements of amended section 6, with regard to the filing, publishing of, and adherence to the schedule of rates. In the group of cases known as the "Express Cases" (117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791), it was held that railroads were not, as to express companies, common carriers. This was later approved in Railway Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560. In United States v. C. & N. W. Ry. Co., 127 Fed. 783, 62 C. C. A. 465, decided in 1904, the Circuit Court of Appeals for the Seventh Circuit held that the granting of a party rate to theatrical, musical, and other enterprises, and withholding it from the government for the transportation of soldiers, did not come within the prohibition of the act. In Northern Pacific Railway Company v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513, and in numerous other cases, the courts have held that, in transporting an employé of another railroad upon a pass, the company did not stand in the attitude of a common carrier for hire to such person. The jurisdiction of Congress to legislate upon the subjects of car equipment and employer's liability was sustained by the Supreme Court in Johnson v. R. R. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, and Howard v. Illinois Central R. R. (decided January 6, 1908) 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. ——, upon the ground that the subject-matter had reference to commerce. "Manifestly," says the court in Adair v. U. S. (decided January 27, 1908) 208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. ——, "any rule prescribed for the conduct of interstate commerce, in order to be within the competency of Congress under its power to regulate commerce among the states, must have some real or substantial relation to or connection with the commerce regulated."

Relying upon the doctrine of these decisions, defendant takes the position that gratuitous transportation is not commerce, because it lacks the essential idea of traffic. The statute is not a police regula-

tion, it says, nor one dealing with questions of public policy, and defendant's acts here involved must be held to transgress the statute only in so far as they are inimical to or influencing commerce. "In respect, however, to the classes not connected with trade or commerce in any manner," say its solicitors, "with whom the carrier has no dealings in its common and accepted relation to the public, we contend that gratuitous service is not commerce in any sense of the term, and not forbidden either by the letter or the spirit of the interstate commerce act. The circumstances and conditions surrounding such service are so entirely removed from and unlike the conditions upon which the carrier serves the public that no comparison can be made between the two to support a charge of unjust discrimination or undue preference." (Defendant's Brief, p. 12.) It may be, as stated, that as to persons and matters in no way connected with trade or commerce the granting of gratuitous carriage would not constitute discrimination or undue preference. If, however, the transaction is within the domain of interstate commerce, it cannot be said to be in no way connected with commerce. Speaking for the Supreme Court in the Employer's Liability Cases, so called (207 U. S. 495, 497, 28 Sup. Ct. 145, 52 L. Ed. ——), it is said by Mr. Justice White:

"From the first section it is certain that the act extends to every individual or corporation who may engage in interstate commerce as a common carrier. Its all-embracing words leave no room for any other conclusion. It may include, for example, steam railroads, telegraph lines, telephone lines, the express business, vessels of every kind whether steam or sail, ferries, bridges, wagon lines, carriages, trolley lines, etc. Now, the rule which the statute establishes for the purpose of determining whether all the subjects to which it relates are to be controlled by its provisions is that any one who conducts such business be a 'common carrier engaged in trade or commerce in the District of Columbia, or in any territory of the United States, or between the several states,' etc.; that is, the subjects stated all come within the statute when the individual or corporation is a common carrier who engages in trade or commerce between the states, etc. From this is follows that the statute deals with all the concerns of the individuals or corporations to which it relates, if they engage as common carriers in trade or commerce between the states, etc., and does not confine itself to the interstate commerce business which may be done by such persons. Stated in another form, the statute is addressed to the individuals or corporations who are engaged in interstate commerce, and is not confined solely to regulating the interstate commerce business which such persons may do; that is, it regulates the persons because they engage in interstate commerce and does not alone regulate the business of interstate commerce."

In New York, New Haven & Hartford R. R. v. Interstate Commerce Commission, 200 U. S. 391, 26 Sup. Ct. 277, 50 L. Ed. 515, the court says:

"It cannot be challenged that the great purpose of the act to regulate commerce, whilst seeking to prevent unjust and unreasonable rates, was to secure equality of rates as to all and to destroy favoritism; these last being accomplished by requiring the publication of tariffs and by prohibiting secret departures from such tariffs, and forbidding rebates, preferences and all other forms of undue discrimination."

Mr. Justice Day, speaking for the court in Armour Packing Co. v. United States (decided March 16, 1908) 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. ——, says:

"But this contention loses sight of the central and controlling purpose of the law, which is to require all shippers to be treated alike, and but one rate to be charged for similar carriage of freight, and that the published and filed rate, equally known by and available to every shipper. * * * In this act we find punishment by imprisonment abolished, and the shipper and carrier are placed upon the like footing, and it is made unlawful for any person or corporation to offer, grant, or give, or to solicit, accept, or receive, any rebate, concession, or discrimination in respect to the transportation of property in interstate or foreign commerce whereby any such property shall, by ·any device whatever, be transported for a less rate than that published and filed by such carriers, or whereby any other advantage is given or discrimination practiced. * * * This act is not only to be read in the light of the previous legislation; but the purpose which Congress evidently had in mind in the passage of the law is also to be considered. * * * The Elkins act proceeded upon broad lines and was evidently intended to effectuate the purpose of Congress to require that all shippers should be treated alike, and that the only rate charged to any shipper for the same service under the same conditions should be the one established, published, and posted as required by law. It is not so much the particular form by which, or the motive for which, this purpose was accomplished; but the intention was to prohibit any and all means that might be resorted to to obtain or receive concessions and rebates from the fixed rates, duly posted and published."

In Hanley v. Kansas City So. Ry. Co., 187 U. S. 619, 23 Sup. Ct. 215, 47 L. Ed. 333, it is said:

"The transportation for others, as an independent business, is commerce, irrespective of the purpose to sell or retain the goods which the owner may entertain with regard to them after they shall have been delivered."

Mr. Justice Harlan, voicing the opinion of the court in Adair v. U. S., decided January 27, 1908, defines "commerce" as follows, viz.:

"This question has been frequently propounded in this court, and the answer has been—and no more specific answer could well have been given—that commerce among the several states comprehends traffic, intercourse, trade, navigation, communication, the transit of persons, and the transmission of messages by telegraph; indeed, every species of commercial intercourse among the several states, but not to that commerce completely internal, which is carried on between man and man in a state, or between different parts of the same state, and which does not extend to or affect other states. The power to regulate interstate commerce is the power to prescribe rules by which such commerce must be governed. Of course as has been often said, Congress has a large discretion in the selection or choice of the means to be employed in the regulation of interstate commerce, and such discretion is not to be interfered with except where that which is done is in plain violation of the Constitution. Northern Securities Co. v. U. S., 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, and authorities there cited."

"If," says Mr. Chief Justice Marshall, in Gibbons v. Ogden, 9 Wheat. 1–196, 6 L. Ed. 23, "as has always been understood, the sovereignty of Congress, though limited to specified objects, is plenary as to those objects, the power over commerce with foreign nations and among the several states is vested in Congress as absolutely as it would be in a single government having in its Constitution the same restrictions on the exercise of the power as are found in the Constitution of the United States."

It thus appears that, while Congress takes jurisdiction of the matter of interstate commerce under the provision of the Constitution pertaining thereto, it in so doing draws to itself full power to deal with all questions arising in that field, and, among others, the right

to declare what shall be and what shall not be permitted therein, subject only to other constitutional provisions, and so to determine what matters are comprehended within the spirit of the act. It may, therefore, not be said, as an abstract proposition, that in respect to the classes claimed by defendant not to be connected with trade or commerce in any manner, with whom the carrier has no dealings in its common and accepted relation to the public, to use counsel's phrase, that gratuitous service is not commerce in any sense of the term, and not forbidden, either by the letter or the spirit of the interstate commerce act. The statute applies to all acts which directly or indirectly affect interstate commerce. Surely it cannot rest in the volition of the carrier, by departing from the published schedules in arbitrary cases, to create a privileged class to which it may with impunity extend discriminating rates. Defendant's contention in this regard is not tenable. There can be no doubt but that it is clearly within the power of Congress to legislate upon the subject-matter here involved and to include the free carriage of goods by an express company for employés of itself, other express companies, and railroad companies, among those acts which are prohibited by the interstate commerce act. The claim on the part of defendant that the granting of the free carriage set out in the pleadings contributes materially toward making its service attractive to employés, resulting in better transportation facilities to the public, and therefore, not within the act, even if true, is beside the question before the court.

While the constitutionality of the act is not here attacked, yet the defendant seems to imply that to construe the statute as asked for in the bill would leave it open to that objection. For the reasons and upon the authorities above set out, and others not cited, this is not the law. Whether or not a construction of a statute would work inconvenience or affect the efficiency of the thing legislated upon is of no moment, provided Congress has the power to legislate upon the subject-matter. A court might well charge itself with judicial cognizance of the fact that, carried to its logical result, the use of free carriage as a means for bettering the public service would revive the very evils which the statute was designed to remove. The court is of the opinion that the transactions set out in the pleadings are within the prohibitions of the statute, and that, unless included within the exceptions thereof, they must be held to violate the same.

It is contended for defendant that the term "passes," as used in said amended section 1 of the act of 1887, includes the franks in question, one form of which reads as follows, viz.:

"1907.

"This frank does not cover charges on foreign S. S. lines or to the U. S. island possessions.

"Wells Fargo & Company will transport free of charge during the current year over its express line the personal packages of ————, subject to conditions endorsed hereon."

The conditions indorsed on the back are as follows:

"The free transportation hereby granted is complimentary and not transferable, and is applicable only to personal packages of the holder, not the

shipments of extra heavy weight or quantity, money, bonds, jewelry, live stock or business consignments.

"By accepting and using this frank, the respondent thereby assumes all risk of loss or damage from whatever cause to property carried under same.

"When charges are collected upon packages entitled to free transportation, the company's agent will if requested refund same upon presentation of the frank.

"The holder of this frank is requested to present it with shipments, when made, or if not practicable to do so, to personally mark on the baggage 'free frank No. ————,' adding his signature. If used at any other place than the residence of the holder, the frank must be presented with the shipment."

While on the merits there may be no just reason why express companies should not have the same liberty in respect to the issuance of free transportation of property that railroads have as to persons, it is evident that this section applies in terms solely to the transportation of particular classes of persons, and there can be no doubt that Congress acted within its powers in so doing. As said in Gibbons v. Ogden, supra, with reference to interstate commerce:

"As has always been understood, the sovereignty of Congress, though limited to specific objects, is plenary as to those objects."

Its acts with regard to subject-matters over which it has plenary power, unless done in contravention of the Constitution, become the supreme law of the land; nor does there seem to be any limitation upon its power to deal as it may elect with the questions involved in the statute under consideration, even though such action, if taken by a state, would be prohibited as class legislation under the fourteenth amendment to the Constitution. In Howard v. Illinois Central Railroad, supra, it was urged that the statute discriminated in favor of the employé and against the employer, "placing all employers who are common carriers in a disfavored, and all their employés in a favored, class." "But," says the court, "without, even for the sake of argument, conceding the correctness of these suggestions, we at once dismiss them from consideration as concerning merely the expediency of the act, and not the power of Congress to enact it. We say this, since, in testing the constitutionality of the act, we must confine ourselves to the power to pass it, and may not consider evils which it is supposed will arise from the execution of the law, whether they be real or imaginary."

There is no reason for assuming that Congress intended to give other meaning to the terms "pass" and "frank" than those in common acceptation—the one referring only to persons, and the other to property, telegrams, and the like. The language of the statute with reference to the filing of and adherence to rates is comprehensive and unequivocal, and, in the absence of the exception of sections 1 and 22, would include the excluded items thereof. By the proviso certain persons are relieved from the general effect of the act. This is deemed to be the fair meaning thereof, and the rule of construction laid down by Mr. Justice Story in United States v. Dickson, 15 Pet. 141–163, 10 L. Ed. 689, is held to apply, viz.:

"In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception must establish it as being within the words, as well as within the reasons, thereof."

And by Mr. Justice Strong in Savings Bank v. U. S., 19 Wall. 227, 235, 22 L. Ed. 80:

"It [the proviso] takes out of the operation of the body of the enactment that which otherwise would be within it. It restrains the generality of the provision."

It will be seen, from the terms of the frank above set out, that it opens a wide field for the evasion of the spirit of the act. It is not even limited to the classes named in the pleadings. This hearing, however, is so limited, and no point is made of this last circumstance. It is broad enough in language to admit of a vast free-carriage business, and might well become a potent factor in the securing of business advantages without transgressing the other provisions of the act. Indeed, there appears to be no legal or ethical grounds for making any presumptions in its favor, as against the letter of the act as amended. Section 22 in terms takes from the operation of the act the carriage, storage, and handling of property free or at reduced rates for the United States and state and municipal governments, and for charitable purposes, and carriage to and from fairs and expositions for exhibition thereat, and the carriage of certain classes of persons named therein specifically. Admittedly, the service herein objected to is not mentioned. It is argued for defendant that the language, "Nothing in this act shall prevent," etc., and "Nothing in this act shall be construed to prohibit," etc., discloses the intention of Congress to make it known that the excepted persons and property were not to be considered within the statute. In Interstate Commerce Commission v. B. & O. R. R. Co., supra, it is said by Mr. Justice Brown:

"The object of section 22 was to settle beyond all doubt that the discrimination in favor of certain persons therein named should not be deemed unjust."

And he adds:

"It does not follow, however, that there may not be other classes of persons in whose favor a discrimination may be made without such discrimination being unjust; in other words, this section is rather illustrative than exclusive. Indeed, many, if not all, of the excepted classes in section 22, are those which, in the absence of this section, would not necessarily be held the subjects of an unjust discrimination, if more favorable terms were extended to them than to ordinary passengers. Such, for instance, are property of the United States. * * * It does not operate to the prejudice of a single passenger, who cannot be said to be injured by the fact that another is able in a particular instance to travel at a less rate than he. If it operates injuriously toward any one, it is the rival road, which has not adopted corresponding rates; but, as before observed, it was not the design of the act to stifle competition, nor is there any legal injustice in one person procuring a particular service cheaper than another. * * * If these tickets were withdrawn, the defendant road would lose a large amount of travel, and the single-trip passenger would gain absolutely nothing."

As said by counsel for defendant:

"The purpose of that statute [the Elkins act] was to prescribe penalties and supply remedies for the better and more effectual enforcement of the interstate commerce act."

The amendments of 1906 infuse greater vitality into the act. Furthermore, in the two cases last cited, the transportation was provided in accordance with published rates, and was regarded by the court as a legitimate means to be employed by the carrier in stimulating the particular kind of carriage embraced within it. There was no deviation from the rates filed with the Interstate Commerce Commission. That Congress might have declared the special party rate illegal will hardly be controverted. Whether this be so or not, the facts of those cases differ so greatly from those set out in the pleadings herein, and the construction asked to be placed upon them is so at variance with the later decisions of the court and the language of the statute as it now stands, that it is considered that the granting of the free carriage set out in the pleadings, in the manner in which it is granted, is not justified by law, and is in contravention of the statute.

It is undoubtedly true that, even in the absence of statutory provision, certain free transportation could not be held to be of a discriminatory nature, as, for instance, those persons and that property directly required by the carrier in sustaining its own construction, maintenance, and efficiency. The Interstate Commerce Commission, in general rule issued October 12, 1906, found in 12 Interst. Com. R. 11, held as follows:

"But the Commission does not construe the law as preventing a carrier from giving necessary free transportation to a person traveling over its line solely for the purpose of attending to the business of, or performing a duty imposed upon, the carrier, nor from giving free carriage over its line to the household and personal effects of an employé who is required to remove from one place to another at the instance of, or in the interest of, the carrier by which he is employed."

Free carriage of persons and property, other than that permitted by the act, and that required solely for the purposes of the carrier and necessary in the performance of its duty to the public, is prohibited by the statute. The acts described in the pleadings come within neither of these classes, and are therefore declared to be in violation of the law.